**U.S. DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Democracy Defenders Fund<br><br>      Plaintiff,<br><br>v.<br><br>Federal Bureau of Investigation<br><br>      Defendant. | Case No. 26-496 |

**RESPONSE TO NOTICE OF REQUEST FOR PRE-MOTION CONFERENCE**

Plaintiff, Democracy Defenders Fund ("DDF"), responds to Defendant Federal Bureau of Investigation ("FBI")'s Notice of Request for Pre-Motion Conference, ECF No. 16 [*hereinafter* Def.'s Notice], as follows.

### A.  The FBI's Glomar Response is Improper Under Exemption 7(C).

FBI acknowledges, correctly, that Mr. Homan has a diminished privacy interest in keeping secret "whether he was under investigation," which is precisely the information FBI seeks to conceal through its *Glomar* response. (Def.'s Notice 2) Mr. Homan's privacy interest in the information has been further diminished by his public statements and those of White House officials. Acknowledgment of information by the White House and other senior officials seriously diminishes the unique harm that would be caused by an agency's acknowledgment of the same information. *See Am. C.L. Union v. C.I.A.*, 710 F.3d 422, 429–30 (D.C. Cir. 2013). Further, the Department of Justice ("DOJ") itself, of which FBI is a component, has confirmed the investigation's existence by testimony of Attorney General Pam Bondi to the Senate Committee on the Judiciary on October 7, 2025, stating "the investigation of Mr. Homan was subjected to a full review by the FBI agents, by Department of Justice prosecutors. They found

no evidence of wrongdoing."[1] Mr. Homan's association with the investigation is thus already an aspect of his life that is publicly known, and FBI's cited caselaw to the contrary can be distinguished on factual context. Finally, to the extent this media would "draw negative and unwanted attention to Mr. Homan, subject him to harassing inquiries," (Def.'s Notice 3), "the general interest of [senior officials] in avoiding harassment or unwanted contact . . . is best understood as a security interest rather than a personal privacy interest, given the inherently public nature of [their] positions and official duties." *Ecological Rts. Found. v. U.S. Env't Prot. Agency*, No. CV 19-980 (BAH), 2021 WL 535725, at \*26 (D.D.C. Feb. 13, 2021), *opinion vacated in part on other grounds on reconsideration*, 541 F. Supp. 3d 34 (D.D.C. 2021).

The invasion of Mr. Homan's vestigial privacy interest is justified due to the overwhelming public interest in the release of the materials. Extensive and credible public reporting documents that law enforcement officials believed, prior to the close of the investigation, that they had a strong case against Mr. Homan based on the recordings to charge conspiracy, bribery, and two kinds of fraud. *See*, *e.g.*, Carol Leonnig & Ken Dilanian, *Tom Homan was investigated for accepting $50,000 from undercover FBI agents. Trump's DOJ shut it down*, MS NOW (Sept. 20, 2025), https://www.ms.now/news/tom-homan-cash-contracts-trump-doj-investigation-rcna232568. This and other reporting, public statements by administration officials, official steps to diminish the Public Integrity Section of the DOJ Criminal Division, outstanding oversight inquiries from both Houses of the U.S. Congress, and other factors cumulatively constitute "evidence that would warrant a belief by a reasonable

---

[1] No official transcript of the hearing currently exists, but this quote was documented in contemporaneous media coverage of the hearing and in the video recording. *See* Jose Pagliery, *Senators Grill Pam Bondi Over FBI's Alleged $50,000 Tom Homan Bribe*, NOTUS (Oct. 7, 2025), https://www.notus.org/senate/pam-bondi-senate-fbi-tom-homan-alleged-bribe.

person that the alleged Government impropriety might have occurred." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). Public inquiries into possible official wrongdoing are sufficient to "denote a public interest . . . based on 'more than mere speculation,' which therefore warrants 'permit[ting] the public to decide for itself whether government action . . . is proper.'" *Citizens for Resp. & Ethics in Washington v. U.S. Postal Serv.*, 557 F. Supp. 3d 145, 158–59 (D.D.C. 2021) (quoting *Wash. Post Co. v. HHS*, 690 F.2d 252, 264 (D.C. Cir. 1982)).

Finally, the public interest is heightened due to its role in preventing public corruption. "It is difficult to understand how there could not be a substantial public interest in disclosure of documents regarding the manner in which DoJ handled high profile allegations of public corruption." *CREW v. DOJ*, 840 F.Supp.2d 226, 236 (2012). "Clearly, the American public has a right to know about the manner in which its representatives are conducting themselves and whether the government agency responsible for investigating and, if warranted, prosecuting those representatives for alleged illegal conduct is doing its job." *Id*.

**B.   The FBI's Glomar Response is Improper Under Exemption 7(E).**

The FBI's summary of its arguments merely summarizes the applicable legal standards and asserts that its declaration will "easily clear th[is] low bar." (Def.'s Notice 4). Public reporting underlying this action has already disclosed the techniques and procedures relied on by the FBI in its investigation of Mr. Homan. Famously, he was provided $50,000 in cash in a paper bag from the Cava restaurant by undercover FBI agents while discretely recorded at a distance. As the *New Yorker* magazine summarized: "[t]he beauty of the Homan story is that its elements are so easily grasped: the undercover agents, the alleged dangling of contracts, the Cava bag, the missing cash. . . . [T]here is every indication that something very wrong happened, whether or

not it amounted to a crime." Ruth Marcus, *Tom Homan and the Case of the Missing Fifty Thousand*, THE NEW YORKER (Oct. 20, 2025), https://www.newyorker.com/news/the-lede/tom-homan-and-the-case-of-the-missing-fifty-thousand. Information about the specific technique or procedure used is squarely in the public sphere. Finally, the technique of recording a bribe to a corrupt public official by undercover FBI agents posing as officials from a nonexistent company is documented in the FBI's official history. *See* FBI, *History, Cases and Criminals, ABSCAM* (last visited Jun. 16, 2026), https://www.fbi.gov/history/cases-and-criminals/abscam.

### C. FBI Improperly Categorically Withheld the Records Sought in Part Two

DDF concurs with FBI that the analysis of Exemptions 6 and 7(C) with respect to Part Two of DDF's FOIA request "largely mirrors the analysis with respect to Part One."

Respectfully submitted on June 18, 2026

*/s/ Taryn Wilgus Null*
Taryn Wilgus Null (DC Bar # 985724)
Norman L. Eisen (DC Bar #435051)
Zsa'Queria Martin (DC Bar # 90043047)

DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, No. 15180
Washington, DC 20003
(202) 594-9958

Norman@democracydefenders.org
Taryn@democracydefenders.org
Zsaqueria@democracydefenders.org

*/s/Kevin H. Bell*
Kevin H. Bell
DC Bar # 90015600
kevin@freeinformationgroup.com

Ginger McCall
DC Bar # 1001104
ginger@freeinformationgroup.com

Free Information Group, PLLC
1100 13th St. NW, Ste. 800
Washington, DC 20005
(202) 946-3642
*Attorneys for Plaintiff*